Irvin BAILEY, on Behalf of Himself and All Others Similarly Situated

v.

Louis W. SULLIVAN [1], M.D., Secretary of Health and Human Services of the United States of America, Appellant.

Irvin BAILEY, on Behalf of Himself and All Others Similarly Situated, Appellant,

v.

Louis W. SULLIVAN [1], M.D. Secretary of Health and Human Services of the United States of America.

Nos. 88–5886, 88–5036 and 88–5903.

United States Court of Appeals, Third Circuit.

Argued April 27, 1989.

Decided Sept. 6, 1989.

**1.** Fed.R.App.P. 43(c)(1) provides that Louis W. Sullivan, M.D., the new Secretary for HHS, should be substituted for Otis R. Bowen, M.D. The rule states that "[a]n order of substitution may be entered at any time."

Peter B. Macky (argued), Sunbury, Pa., Paul Welch, Lock Haven, Pa., Frederick M. Stanczak, Legal Services of Cent. N.Y., Syracuse, N.Y., Jonathan M. Stein, Community Legal Services, Philadelphia, Pa., for appellants/cross appellees.

James J. West, U.S. Atty., Barbara L. Kosik, Asst. U.S. Atty., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec., A. George Lowe, Chief, Disability Litigation Branch, Wendy J. Miller (argued), Office of the Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Ellicott City, Md., for appellee/cross-appellant.

Before SEITZ *, SLOVITER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Introduction

This appeal and cross-appeal are from orders of the district court entered in a class action challenging the Secretary of Health and Human Service's regulations and rulings with respect to the severe impairment inquiry in making disability determinations. This is the second time this case has been before us. Appellants, a class of social security claimants who had been denied Social Security disability or Supplemental Security Income (SSI) disability because their impairments were found not to be severe, appeal from an order of the district court dismissing in its entirety those portions of the complaint which make as applied challenges to certain of the Secretary's regulations and rulings governing

severity. *See Bailey v. Bowen,* 699 F.Supp. 51 (M.D.Pa.1988). Appellants argue that the district court erred in refusing to permit this action to proceed as a class action on the plaintiffs' claim that the Secretary had systematically misapplied the severity regulations pursuant to a secret policy. The Secretary cross-appeals that portion of the district court's order which concluded that the prior regulations which prohibited the Secretary from evaluating the combined effect of nonsevere conditions were invalid on their face. Additionally, both parties challenge the district court's definition of the class, and plaintiffs appeal from an order of the district court denying them leave to amend the complaint. App. II at 13. The appeal presents primarily questions of law over which our review is plenary.

### II.

#### Facts and Proceedings Below

Although there are no factual matters ripe for our consideration on this appeal, the protracted procedural history of this case is of relevance. This case began in 1983 when named plaintiff, Irvin Bailey, filed an action for judicial review of a final decision of the Secretary denying him SSI benefits. Bailey amended his complaint to assert a class action challenging the validity of the Secretary's severity regulations on behalf of all social security claimants who had been denied benefits at step two of the Secretary's five-step sequential evaluation process. Specifically, the plaintiffs challenged the regulations at 20 C.F.R. §§ 404.1520(c), 404.1522, 416.920(c), 416.-922 [2] and Social Security Ruling (SSR) 82–

---

* Since the date of the argument in this case, Judge Seitz has taken senior status.

**2.** The challenged regulations provide in pertinent part as follows:

*Section 404.1520(c)*

(c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore,

not disabled. We will not consider your age, education, and work experience.
20 C.F.R. § 404.1520(c) (1988); *see also* 20 C.F.R. § 416.920(c) (1988) (identical language for SSI claimants), and

*Section 404.1522*

(a) *Unrelated severe impairments.* We cannot combine two or more unrelated severe impairments to meet the 12–month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even

55, contending that the regulations impermissibly allowed the Secretary to determine severity on the basis of medical factors without considering the vocational factors (age, education, work experience) which are relevant at later phases of the sequential evaluation, and that they impermissibly prohibited the Secretary from considering the cumulative impact of several nonsevere impairments. Plaintiffs also challenged the various regulations under the Administrative Procedure Act.

The district court certified a class consisting of persons in Social Security Region III who had been denied SSA or SSI benefits on the ground that their impairments were not severe. The class was eventually redefined to include only those claimants residing in Pennsylvania or Delaware. The class was limited to claimants who had received a final decision of the Secretary denying benefits and who had a petition for review pending in federal court at the time of the decision in the class action and those claimants who had received unfavorable rulings from the Secretary but who had not exhausted their administrative remedies.

The district court granted summary judgment for the plaintiffs, and ordered that the Secretary readjudicate the claims of all class members without applying any of the challenged regulations. On the first appeal to this court, we vacated and remanded for reconsideration in light of *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), in which the Supreme Court upheld the facial validity of the regulations which excluded the vocational factors from consideration at the severity stage, *i.e.*, 20 C.F.R. §§ 404.1520(c) & 416.920(c).

On remand, plaintiffs no longer pressed their facial challenge to the regulations that had been upheld in *Yuckert*, but sought to proceed on their challenge to the regulations as applied. In fact, plaintiffs sought leave to amend the complaint to clarify that this was their remaining challenge to the severity regulations and to add a challenge to SSR 85–28 which had replaced the previously challenged SSR 82–55. The district court denied leave to amend in both respects.

The district court adhered to its prior decision that insofar as the regulations, 20 C.F.R. §§ 404.1522 and 416.922, precluded consideration of the combined effect of nonsevere impairments, they violated the SSA because they require multiple impairments to be considered individually rather than in combination. However, the district court dismissed the plaintiffs' claims of misapplication of the severity regulations adopting the portion of the magistrate's report which concluded that in light of *Yuckert*, such claims were not appropriate for a class action.[3]

We will address in turn the district court's rulings on the severity regulations, the projected amendments to the complaint, the combination policy, claims under the APA, and the class composition issues.

### III.

### Dismissal of Plaintiffs' Claims
### *Challenging Regulations as Applied*

■ Under the Social Security Act, an individual ... shall be determined to be under a disability only if his physical

---

though the two impairments in combination last for 12 months.

(b) *Concurrent impairments.* If you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined *effect* of your impairments can be expected to continue to be severe for 12 months. If one or more of your impairments improves or is expected to improve within 12 months, so that the combined effect of your remaining impairments is no longer severe, we will find that you do not meet the 12–month duration test.

20 C.F.R. § 404.1522 (1988); *see also* 20 C.F.R. § 416.922 (1988) (identical language for SSI claimants).

3. In response to defendant's motion to clarify whether the court has entered final judgment, the court on November 18, 1988 entered an order stating that it was its intention that the order of September 13, 1988 be a final judgment. It ordered the clerk of the court to enter judgment in favor of the plaintiffs *nunc pro tunc* as to the plaintiffs' claims directed to the combination regulations, and directed the clerk to close the file.

or mental *impairment or impairments* are of such severity that he is not only unable to do his previous work but cannot ... engage in any other kind of substantial gainful work....

42 U.S.C. § 423(d)(2)(A) (1982) (emphasis added); *see also* 42 § 1382c(a)(3)(B) (1982) (same definition for SSI).

Plaintiffs' amended complaint sought a declaratory judgment that:

Defendant's regulation *and policy* of denying and terminating Title II (SSDI) and Title XVI (SSI) disability benefits to individuals who are disabled but who are denied or terminated on the basis of the lack of a "severe" impairment violates 42 U.S.C. § 423(d) and § 1382c(a)(3) and, the United States Constitution and, therefore, is invalid.

App. I at 104 (emphasis added).

Prior to 1978 the Secretary's regulations provided that a claimant could be denied benefits on medical considerations alone "where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities." 20 C.F.R. § 404.1502(a) (1968). Plaintiffs refer to this regulation as effecting a "slight impairment" or *de minimis* policy with respect to nonseverity rulings.

In 1978, when the Secretary promulgated the five-step evaluation process currently in use, he reworded this regulation to provide as follows:

Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability without consideration of the vocational factors.

20 C.F.R. § 404.1503(c) (1979). The Secretary subsequently revised this regulation to read as follows:

If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore,

not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 1520(c) (1980). Plaintiffs have not argued that the 1980 change was substantive rather than editorial.

At the time the wording of the regulations changed from "slight impairment" to "not ... severe," the Secretary stated that the change "was not intended to alter the levels of severity for a finding of disabled or not disabled." 43 Fed.Reg. 9297 (1978); *see also* 43 Fed.Reg. 55357–58 (1978). If the impairment is determined to be severe, the sequential evaluation requires consideration of whether the claimant is conclusively presumed disabled because the impairment fits within one of the listed impairments. If not, the evaluation continues by determining if claimant can perform his or her past work or, finally, whether s/he is able to perform other work in the economy. *See* 20 C.F.R. § 404.1520(d)–(f) (1988). The Secretary's avowed purpose in changing the regulations in 1978 was to streamline the five-step evaluation process by insuring that all claims in which no severe impairment existed were disposed of at step two, thus avoiding the bureaucratic expense of following the vocational evaluation sequence, *see* 45 Fed.Reg. 55574 (1980).

Although *Yuckert* foreclosed plaintiffs' argument that 20 C.F.R. §§ 404.1520(c) and 416.920(c) were facially invalid on the ground that they did not consider a claimant's age, education, or work experience as required by the statutory definition of disability, plaintiffs sought to proceed on remand on their claim that since 1978 the Secretary had systematically applied the regulations to deny benefits at step two to claimants whose impairments do meet the statutory definition of disability and whose impairments were more than *de minimis*. This argument was alluded to in the Court's opinion in *Yuckert* but not decided in that case. *See* 482 U.S. at 153–54, 107 S.Ct. at 2297. Five Justices, however, gave more than passing attention to the misapplication claim. In her concurring opinion, Justice O'Connor, joined by Justice Stevens, stated that the statistical evidence of markedly increased denials of disability at step two seemed to indicate that the Secre-

tary had used the severity regulation to weed out a greater percentage of claims after the 1978 change in the wording of the regulation from "slight impairment" to "not ... severe" impairment. *See id.* at 156–58, 107 S.Ct. at 2298–2300 (O'Connor, J., concurring). The three dissenters agreed with Justice O'Connor "that the evidence suggests that step two has been 'applied systematically in a manner inconsistent with the statute.'" *Id.* at 179, 107 S.Ct. at 2310 (Blackmun, J., dissenting).

In essence, plaintiffs' misapplication claim is that the severity regulations assertedly designed to exclude *de minimis* claims at step two can be properly applied only to deny claims where there is no significant impairment to the claimant's ability to do basic work activities. In fact, two courts of appeals have directed the Secretary to apply a *de minimis* standard at step two. *See Stratton v. Bowen,* 827 F.2d 1447, 1453 (11th Cir.1987); *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1122 (1st Cir.1986). Although the Court in *Yuckert* did not explicitly adopt the *de minimis* approach proffered by plaintiffs, there is language which suggests that the Court assumed that this was the Secretary's position. *See, e.g.,* 482 U.S. at 153, 107 S.Ct. at 2297 ("Respondent Yuckert has conceded that the Secretary may require claimants to make a '*de minimis*' showing that their impairment is severe enough to interfere with their ability to work."). The Eighth Circuit has construed *Yuckert* to mean that a majority of the Supreme Court has adopted a slight impairment standard. *See Brown v. Bowen,* 827 F.2d 311, 312 (8th Cir.1987).

Plaintiffs refer us to statistics showing that from 1975 to 1983, the percentage of total disallowances of disability claims on the basis of a nonsevere impairment at step two increased from 8.4% to 39.4%. They refer to an affidavit filed in another action by the Chief of the New York Office of Disability Determination stating that it was the Secretary's policy to apply an "increasingly strict threshold severity standard" which differed substantially from the previous slight impairment test, App. II at 46; they also refer us to an internal Social Security Administration report to support their claim. The Secretary gives a different interpretation to the statistics and the evidence, and insists that plaintiffs have not shown that he misapplied the severity regulations and rulings.

Although the district court dismissed plaintiffs' misapplication claim, it did not rule on the merits of that claim. Instead, it concluded on the basis of the magistrate's report and recommendation that misapplication claims were not appropriate for class treatment. Thus, plaintiffs' evidence purporting to show that the Secretary had an unspoken policy of using the severity regulations to foreclose meritorious claims is irrelevant to the issue before us on this appeal. The question which we must decide is considerably narrower: may the misapplication claims proceed as a class action?

In determining that a class action was inappropriate for the misapplication claims, the magistrate relied on language in *Yuckert* stating that invalidation of the severity regulations would not be "an appropriate remedy for the Secretary's allegedly unlawful application of the regulation." 482 U.S. at 154 n. 12, 107 S.Ct. at 2297 n. 12. The magistrate reasoned that, "[i]ndividual claimants who have been denied benefits because the severity regulations were misapplied ... have an established avenue of judicial review available." App. II at 32. The magistrate also based his analysis on the fact that plaintiffs had not sought to amend their pleadings to request a remedy other than invalidation of the regulations.

Neither of the magistrate's reasons for concluding that the plaintiffs' as applied challenge to the regulations could not proceed as a class action supports that conclusion. Plaintiffs' amended complaint, which included the facial challenge as well, requested not only invalidation of the severity regulations but also a declaration that the Secretary's policy of denying benefits under the severity regulations was invalid. As stated by the plaintiffs in their reply brief on this appeal, the relief they seek in the class action is essentially an injunction requiring the Secretary to apply the severi-

ty regulations in a *de minimis* fashion and a reevaluation of any claims which were decided under the invalid policy. Since such relief would not require invalidating regulations, but would only be directed to the Secretary's alleged secret policy of denying otherwise meritorious claims on the basis of an impermissibly broad concept of nonseverity, it would not be inconsistent with *Yuckert.*

Although the plaintiffs may have contributed to the confusion on this point at the district court level, we note that the Secretary stated at oral argument that the plaintiffs' claim for injunctive relief described above was fully presented below. Thus, we conclude that plaintiffs' complaint adequately stated a claim for relief which was not foreclosed by *Yuckert,* and that dismissal of the complaint on this ground was legal error.

On appeal, the Secretary contends that plaintiffs' claims of misapplication require individualized determinations that are inappropriate for class resolution. He relies on our opinion in *Geraghty v. United States Parole Comm'n,* 719 F.2d 1199, 1205–06 (3d Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984), holding that the district court did not abuse its discretion in denying class certification on the question of the legality of federal parole guidelines as applied. The plaintiff class in *Geraghty,* however, sought individualized determinations that the parole guidelines had been misapplied, and did not identify a policy of misapplication common to all class members.

The Secretary states that, "[c]lass certification under Rule 23(a) and (b)(2) is appropriate only where declaratory or injunctive relief is the primary reason for the action." Appellee's Brief at 18. Since we understand plaintiffs' claim for class-wide relief to extend only to a declaration that the Secretary's policy of improperly denying claims at the severity stage is invalid, coupled with a remand for reconsideration of any cases denied because of the alleged secret policy, it appears that the Secretary's position on appeal is based on a misperception of the nature of plaintiffs' claim for class-wide relief.

Although we express no opinion on whether the plaintiffs' challenge to the Secretary's alleged policy should be certified as a class action for purposes of determining whether such a policy existed in violation of the SSA, we note that class certification under Fed.R.Civ.P. 23(b)(2) requires only that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." There is also an obvious advantage in having what may be extensive evidence on the misapplication claim placed before the court in one hearing. Of course, there may be valid counterarguments which the Secretary has not made on appeal as to why a class should not be certified and which we do not mean to preclude.

Other district courts have faced the same question presented here. Most recently, the District Court for the District of New Jersey concluded that "[t]o the extent that plaintiffs allege a policy of systematic rather than case-specific misapplication, their claim is suitable for class adjudication for the same reasons that their claim of facial invalidity was so suitable." *Wilson v. Sullivan,* 709 F.Supp. 1351, 1357 (D.N.J.1989); *see also Dixon v. Bowen,* 673 F.Supp. 123 (S.D.N.Y.1987) (claim of systematic misapplication of the severity regulations could proceed as a class action after *Yuckert* ); *but see Johnson v. Bowen,* 697 F.Supp. 346, 351 (N.D.Ill.1988) (refusing to reinstate order vacated in light of *Yuckert* because relief had originally been based solely on finding of facial invalidity of severity regulations, and not on a finding of systematic misapplication).

In light of our conclusion that *Yuckert* does not preclude plaintiffs from seeking a declaration that the Secretary cease and desist from systematically misapplying the severity regulations, we will remand for a determination by the district court as to whether this claim should proceed as a class action. If it determines that it

should, the district court will conduct further proceedings to permit the presentation of evidence bearing on the plaintiffs' claims of systematic misapplication.

## IV.

### *Denial of Leave to File a Second Amended Complaint*

■ After this court remanded this case for consideration in light of *Yuckert,* plaintiffs sought leave to file a second amended complaint to clarify the nature of their claim in light of *Yuckert,* and to add a challenge to SSR 85–28 which was promulgated in 1985 to replace SSR 82–55.

Leave to file a second amended complaint is within the discretion of the trial court, and leave is to be freely granted when justice so requires. *See* Fed.R.Civ.P. 15(a). The district court concluded that the parties' briefing before the magistrate made the nature of the issues before the court sufficiently clear that an amendment was unnecessary. Although we note that allowing plaintiffs to amend for purposes of clarifying the nature of their remaining claim with respect to the severity regulations might have clarified the nature of the remedy requested for purposes of the ruling previously discussed, we find no abuse of discretion in not granting leave to amend at that late stage in the proceedings.

■ The district court also adopted the magistrate's conclusion that because no claims had been denied under SSR 85–28, plaintiffs had no standing to challenge that ruling. The court decided that no purpose would be served by allowing a second amendment to the complaint to add a challenge which would be dismissed. *See Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) (leave to amend need not be granted where the amendment would not withstand a motion to dismiss). We agree and note that the filing of their original complaint does not give plaintiffs a roving commission to challenge all regulations and rulings thereafter adopted. The district court may properly confine the suit to the principal claims asserted originally, fairly construed. It did not abuse its discretion under Fed.R. Civ.P. 15(a) to deny leave to amend the complaint which would have greatly expanded the claim and the class.

## V.

### *The Combination Policy*

■ The Secretary has cross-appealed from the district court's invalidation of the "combination policy" formerly applied pursuant to 20 C.F.R. §§ 404.1522, 416.922 and SSR 82–55. The policy, established in 20 C.F.R. §§ 404.1522 and 416.922, provided that the Secretary would "consider the combined effects of unrelated impairments only if all are severe and expected to last twelve months." 20 C.F.R. §§ 404.1522, 416.922 (1983). SSR 82–55 stated, "[i]nasmuch as a nonsevere impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work-related functions needed to do most jobs." [4] The Secretary's theory was that nonsevere impairments are unlikely to have any sort of cumulative effect which would limit a claimant's ability to perform basic work functions.

In its 1985 order, the district court enjoined the Secretary from applying the challenged regulations and ruling to claims by class members, and ordered the Secretary to readjudicate the claims of any class member who had been denied benefits under any of the invalidated provisions. The district court, on reconsideration after our remand, concluded that *Yuckert* did not address the "combination policy" and stated that plaintiffs' claim that the combination policy violated the Social Security Act "remains an issue in this case." 699 F.Supp. at 54. In a later order directing entry of a judgment in favor of the plaintiff class, *nunc pro tunc* to September 13,

---

**4.** SSR 82–55 provided guidance in the implementation of this approach by providing a non-exclusive list of impairments which were presumptively nonsevere.

1988, the district court clarified that its decision was final and that the original order vis-a-vis the combination policy was reinstated.

The SSA was amended by the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 4(a)(1), 98 Stat. 1794, 1800 (1984) (DBRA), in such a way as to explicitly repudiate the combination policy. Section 223(d)(2)(C) provides that in determining an individual's eligibility for benefits, the "Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *See* 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. §§ 404.1523, 416.923. Thus, the district court's order only applied to class members whose claims were denied prior to December 1, 1984, the effective date of the amendment.

The district court's invalidation of the combination policy was based largely on the rationale of *Johnson v. Heckler,* 769 F.2d 1202, 1213–15 (7th Cir.1985), in which the court determined that the fact that 42 U.S.C. § 423(d)(2)(A) referred to severity in terms of "physical or mental *impairment or impairments*" mandated the consideration of the combined effect of all impairments. 42 U.S.C. § 423(d)(2)(A) (emphasis added). The Secretary argues that the fact that the statute also defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental *impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A) (emphasis added), requires the presence of at least one impairment which by itself could render the claimant disabled.

The *Johnson* court treated the fact that Congress had amended the statute specifically to require consideration of the combined effect of impairments as a correction of the Secretary's erroneous interpretation rather than as a substantive change. That court also noted that at the time the amendments to the statutory definition of disability were passed in 1968, the Secretary's own regulations defined disability in terms of "impairment or impairments." *Johnson,* 769 F.2d at 1214 (citing 33 Fed. Reg. 11749, 11750 (1968), codified at 20 C.F.R. § 404.1501(a)(1) (1969)); *see also McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1127 (1st Cir.1986) (the Secretary's policy of not considering the combined effect of nonsevere impairments dates only from 1980).

The mere fact that the singular "impairment" is used in 42 U.S.C. § 423(d)(1)(A) cannot bear the weight the Secretary ascribes to it. Although the word "impairment" can be read as "medical condition," it also has a functional connotation, and a single impairment may well be the product of multiple medical conditions. For example, the claim of Bailey, the named plaintiff, was that he suffered from blindness in one eye, arthritis of the spine, chronic obstructive pulmonary disease, heart disease, leg cramps, headaches, bad nerves, depression and status post mouth cancer. Given that the definition of disability in the SSA is functional, based on the claimant's inability to perform certain tasks, it would be illogical to read the Act as precluding the Secretary from considering the combined functional effect of nonsevere impairments. We note that all the circuits which have considered the issue have concluded that the combination regulations were invalid. In addition to the First and Seventh Circuits, which invalidated the combination policy in *McDonald* and *Johnson* respectively, two other circuits have read the SSA as requiring the Secretary to consider the combined effects of nonsevere impairments in individual cases. *See Bowen v. Heckler,* 748 F.2d 629, 634–35 (11th Cir.1984); *Felshina v. Schweiker,* 707 F.2d 71, 73 (2d Cir.1983).

The Secretary argues on appeal that the legislative history of the DBRA indicates that the provision dealing with the combination of impairments was viewed as a change in the law. The Secretary relies primarily on the statement in Senate Report No. 466, 98th Cong., 2d Sess. at 22, referring to section 223(d)(2)(C) as a "new

rule." The Secretary also notes that House Conference Report No. 1039 describes the law prior to enactment of the DBRA as having "no statutory provision concerning the consideration of the combined effects of a number of different impairments." H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 29, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3038, 3080, 3087. Furthermore, the Secretary argues that Congress, in enacting the combined impairment provision, chose not to make it retroactive while at the same time making other provisions of the DBRA retroactive.

The fact that the Senate Report describes section 223(d)(2)(C) as a "new rule" does not preclude us from treating it as a mere clarification of the existing law. While it is true that section 223(d)(2)(C) added new language to the statute, that does not mean that the earlier version of section 223(d) was not intended to be interpreted so as to require consideration of multiple impairments. In fact, the most persuasive legislative history indicates that section 223(d)(2)(C) was intended only as a clarification. House Report No. 618 states that the DBRA was generally intended to clarify existing law, and that the provision concerning the combination of impairments was part of that clarification. *See* H.R. Rep. No. 618, 98th Cong., 2d Sess. 6–8, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3043–46 (DBRA "does not constitute any change in the current definition of disability"). Since it was the House bill that eventually passed, we find this language the best evidence of legislative intent.

The Secretary urges, however, that the Senate Report must be given equal weight in light of the fact that the Supreme Court in *Yuckert* relied on both the Senate Report and the House Report in concluding that the Secretary was free to ignore vocational factors at the second stage of the

sequential inquiry. Although the Supreme Court in *Yuckert* did look to both the Senate and House reports, nothing in that opinion requires us to assign any particular weight to either of those sources in ascertaining the legislative intent behind a regulatory policy that was not before the Court in that case.[5] If anything, *Yuckert* reinforced the notion that the SSA concept of disability is functional, rather than technical, thus supporting the common-sense realization that the combined effect of non-severe medical conditions can cause a functional impairment that meets the statutory definition of disability. This suggests that the statute should have been read to require consideration of such combinations even before the DBRA. We thus reject the Secretary's cramped interpretation of the statutory language and legislative history, and we will affirm the district court's order invalidating 20 C.F.R. §§ 404.1522, 416.922 and SSR 82–55, and requiring the Secretary to afford claimants who were denied benefits on the basis of these provisions an opportunity to have their claims reconsidered.

## VI.

### *Validity of the Regulations and SSRs under the APA*

Plaintiffs have also challenged the severity regulations at issue here and SSR 82–55 on procedural grounds under the Administrative Procedure Act. The magistrate recommended that plaintiffs' APA claims not be dismissed, stating that "[t]he Secretary has not shown that the changes effected in 1978 and 1980 complied with the APA or that these changes were not subject to the requirements of the APA." App. II at 34. The district court disagreed, and rejected all of plaintiffs' APA-based challenges.

Plaintiffs' APA claims concerning 20 C.F.R. §§ 404.1520(c), 404.1521 and 416.-920(c) are twofold. They contend that the

---

**5.** After *Yuckert,* the district court for the Northern District of Illinois reaffirmed its conclusion that the combination policy was invalid. *See Johnson v. Bowen,* 697 F.Supp. 346, 352–53 (N.D.Ill.1988). Similarly, the First Circuit left intact a district court decision striking down the combination policy after *Yuckert. See Mc-*

*Donald v. Secretary of Health and Human Services,* 834 F.2d 1085 (1st Cir.1987). The Secretary points to no judicial authority reading *Yuckert* as mandating a finding that the legislative history of the DBRA compels the conclusion that those amendments constituted a substantive change in the law.

1978 and 1980 amendments to these regulations effected substantive changes in the regulations without complying with the notice and comment provisions of 5 U.S.C. § 553 (1982). They also contend that these substantive changes were made arbitrarily and capriciously in violation of 5 U.S.C. § 706 (1982).

The gist of plaintiffs' argument is that the 1978 and 1980 amendments to the challenged regulations effected a shift from a *de minimis* use of the second stage of the inquiry to a more rigorous application of that section in order to deny otherwise meritorious claims, but that because this application was accomplished through a secret policy it was not subject to the notice and comment required by the APA. This argument is subsumed in the plaintiffs' argument that the regulations actually promulgated were systematically misapplied, and need not be reexamined under the guise of an APA challenge.

■ We treat the plaintiffs' APA argument also as challenging the procedure used in promulgating the regulations and conclude that no APA violations have occurred. The district court found that the challenged regulations were promulgated in accordance with the notice and comment procedures of 5 U.S.C. § 553(b) & (c) which provide in pertinent part that, "[g]eneral notice of proposed rule making shall be published in the Federal Register," and "[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." The regulations were published pursuant to the notice and comment procedure. *See* 43 Fed.Reg. 9284, 55349 (1978); 44 Fed.Reg. 38879 (1979); 45 Fed.Reg. 55566 (1980). The APA requires no more, and we affirm the district court's dismissal of plaintiffs' APA challenge to 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c).

■ Plaintiffs also challenge the enactment of SSR 82–55, which precluded combining nonsevere impairments and provided examples of a number of medical conditions to be treated as per se nonsevere, on the ground that this SSR is a substantive rule which should not have been implemented without following the notice and comment procedures. The Secretary argues, however, that SSR 82–55 is merely an interpretation of the severity regulations. *See* 5 U.S.C. § 553(b)(A) (notice requirement does not apply "to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice"). Therefore, the Secretary urges us to find, as did the district court, that the fact that SSR 82–55 was available pursuant to 5 U.S.C. § 552(a)(2)(B) satisfies the APA.

If the rule in question merely clarifies or explains existing law or regulations, it will be deemed interpretive. *See McKenzie v. Bowen*, 787 F.2d 1216, 1222 (8th Cir.1986); *United States v. Walter Dunlap & Sons*, 800 F.2d 1232, 1238 (3d Cir.1986). Plaintiffs rely on *Pickus v. United States Bd. of Parole*, 507 F.2d 1107, 1112–13 (D.C.Cir. 1974), where the court held that self-imposed parole guidelines established by the agency were substantive. Here, a careful examination of SSR 82–55 leads us to conclude that the portion challenged for this purpose contains merely examples of the application of the severity regulations, which themselves were subject to notice and comment, and that the SSR represents the type of interpretation which the Secretary has discretion to announce. *See Jackson v. Heckler*, 580 F.Supp. 1077, 1081 (E.D.Pa.1984) (upholding SSR 82–55 against APA challenge). Therefore, we will affirm the district court's dismissal of plaintiffs' APA challenge to SSR 82–55.[6]

Finally, there is no serious argument advanced by the plaintiffs that any of the challenged regulations or rulings are arbitrary or capricious. Therefore, we will affirm the district court's dismissal of plaintiffs' APA claims in their entirety.

---

**6.** In light of our holding that the district court did not abuse its discretion in denying plaintiffs' motion to amend their complaint to add a challenge to SSR 85–28, the APA challenge to that ruling is not before us.

## VII.

### Class Composition Issues

█ The district court has certified a class directed to plaintiffs' original claims and which covered claimants denied benefits both under the combination policy and the severity regulations. We consider it for these purposes as addressed only to claimants aggrieved by the combination policy. The class was defined as follows:

> All persons in [Pennsylvania and Delaware] who have been denied Social Security disability or Supplemental Social Security Income disability benefits because their impairments were found not to be severe, without consideration of age, education and work experience or because their impairments were not considered in combination and who, at the time of this court's decision on the merits of this case have
>
> a) received a final decision of the Secretary and have a pending case challenging the denial of benefits; or
>
> b) who have not exhausted administrative remedies but have received an unfavorable decision from the Secretary as a result of the application of the severity regulations and ruling, including all persons whose benefits were terminated or denied as a result of the application of the challenged regulations and ruling but who have not taken an appeal to the federal courts.
>
> The onset date for class membership shall be March 10, 1984.

App. II at 4–5.[7] In defining the class in this manner the district court refused plaintiffs' request to include in the class claimants who had received an adverse final agency determination sixty or more days prior to the filing of the class action but who did not seek judicial review within that time as required by 42 U.S.C. § 405(g). Plaintiffs have appealed the court's failure to waive the requirement to seek judicial review. The class as defined did excuse

administrative exhaustion for those claimants whose claims had not yet lapsed at the time the class action was filed.[8] The Secretary has cross-appealed from this portion of the order.

The general principles governing exhaustion and the failure to seek judicial review have been visited in two recent Supreme Court cases, *Pittston Coal Group v. Sebben*, —— U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), and *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). In *City of New York*, a class of social security claimants made the claim analogous to that of plaintiffs here that the Secretary of Health and Human Services had a clandestine policy of denying benefits to claimants with mental impairments without conducting the individualized evaluation of the claimants' ability to work required by the sequential evaluation process. 476 U.S. at 473, 106 S.Ct. at 2026. The district court included in the class claimants who had received final agency determinations but who had not sought judicial review within sixty days as required by 42 U.S.C. § 405(g), and claimants who failed to exhaust their administrative remedies. 476 U.S. at 475–76, 106 S.Ct. at 2027.

The Court upheld the class certification as to both groups. Noting that the sixty-day requirement in 42 U.S.C. § 405(g) was not jurisdictional but rather in the nature of a statute of limitations, *id.* at 478, 106 S.Ct. at 2029, the Court applied the principle of equitable tolling to excuse the failure to seek judicial review, *id.* at 480–81, 106 S.Ct. at 2030. Equitable tolling was appropriate, the Court reasoned, because the government's " 'secretive conduct prevent[ed] plaintiffs from knowing of a violation of rights.' " *Id.* at 481, 106 S.Ct. at 2031 (quoting *City of New York v. Heckler*, 742 F.2d 729, 738 (2d Cir.1984), *aff'd* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)). The same rationale justified waiving the exhaustion requirement for those

---

**7.** March 10, 1984 is 60 days before the filing of the class action claim.

**8.** In light of our disposition of this case, we need not decide whether the class included per-

sons whose claims lapsed due to failure to exhaust administrative remedies before the class action was filed.

claimants whose opportunity to pursue administrative remedies had lapsed prior to the filing of the class action. *Id.* 476 U.S. at 482, 106 S.Ct. at 2031.

The Court also concluded that those claimants who failed to exhaust administrative remedies after the class action was filed were not required to do so because the claims raised in the class action which addressed systemwide violations by the Secretary were collateral to individual claims for benefits. The plaintiffs' challenge was not based on individual facts and hence there was no need to let the agency develop a factual record. In light of the agency's adherence to its policy, exhaustion would be futile. *Id.* at 485, 106 S.Ct. at 2032-33. The Court also refused to disturb the district court's finding that the claimants would suffer irreparable harm by being forced to undergo the administrative review process. *Id.* at 483-84, 106 S.Ct. at 2031-32. Finally, the Court cautioned that not "every internal policy that is found to be inconsistent with legal requirements, and arguably touches upon the outcome of a class of cases, will justify tolling the statute or limitations or excusing exhaustion." *Id.* at 487, 106 S.Ct. at 2033.

*Pittston Coal,* decided two years later, involved suits by unsuccessful black lung claimants seeking a ruling that the Secretary of Labor's regulations governing presumptive entitlement to benefits were more restrictive than permitted by the Black Lung Benefits Reform Act. The Eighth Circuit had ordered the Secretary to readjudicate cases notwithstanding the claimants' failure to exhaust their administrative remedies or to timely petition for judicial review. *See Sebben v. Brock,* 815 F.2d 475, 482-84 (8th Cir.1987), *rev'd,* —— U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). The Court reversed, holding that equitable tolling of the limitations period for seeking administrative or judicial review was not appropriate because "[t]he agency action here was not taken pursuant to a secret, internal policy, but under a regulation that was published for all to see. If the respondents wished to challenge it they should have done so when their cases were decided." *Pittston Coal,* 109 S.Ct. at 425.

Although the Secretary argues that *Pittston Coal* overrules *City of New York,* that is plainly not the case. *Pittston Coal* stands at most for the proposition that equitable tolling and excusal of exhaustion are not appropriate unless the government's clandestine actions have kept plaintiffs from appreciating the scope of their rights. *See also Wong v. Bowen,* 854 F.2d 630 (2d Cir.1988) (equitable tolling only proper where government acts in clandestine or misleading way). Far from overruling *City of New York,* the Court recognized its continuing validity and merely distinguished it.

Applying the teaching of *City of New York* and *Pittston Coal* to the class of claimants whose claims were denied under the combination policy, we conclude that there is no supportable basis on which to excuse either failure to exhaust administrative remedies or seek judicial review from a final agency decision denying benefits before the class action was brought. The combination policy was openly applied and, as *Pittston Coal* suggests, plaintiffs' rights would have been vindicated by seeking judicial review at the time their claims were decided. Absent government conduct which prevented plaintiffs from recognizing that they had a valid claim, *City of New York* does not require a different result. Furthermore, *City of New York* clearly states that claimants who have allowed a claim to become final before the filing of a class action through failure to exhaust administrative remedies stand on the same footing as claimants who have received a final agency determination but have failed to seek judicial review. *City of New York,* 476 U.S. at 482, 106 S.Ct. at 2031. Thus, the class entitled to relief on the ground that their claims had been denied under the combination policy should not include any plaintiffs whose claims lapsed before the filing of the class action.

■ It does not necessarily follow, however, that the same result applies to those claimants who still had an opportunity to pursue administrative appeals or request judicial review at the time the class action

was filed. Because the Court in *City of New York* found that the requirement that a claimant request judicial review within 60 days after a final decision could be excused, it did not focus on the different considerations that might be pertinent to the group of claimants who could have made such a timely request after suit had been brought. We, however, must decide whether the group of claimants whose claims had not lapsed at that time are nonetheless protected by the filing of the class action.

There is substantial authority that the filing of a class action tolls the running of the statute of limitations otherwise applicable to all class members in their individual capacities. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553–54, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Indeed, the Secretary concedes that under *Crown, Cork & Seal Co.*, "individuals who received final decisions from the Secretary within 60 days of the filing of the class complaint and thereafter are class members." Appellee's Brief at 62 n. 25.

We must decide then whether similar principles can be used to justify waiver of administrative exhaustion for claimants who received an adverse determination but who did not request reconsideration, an ALJ hearing, or appeal to the Appeals Council. In discussing this issue, the Court in *City of New York* referred to the requirements of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), that waiver of exhaustion is proper only for claims which are collateral to the claim for benefits and only if requiring exhaustion would cause irreparable harm, 476 U.S. at 482, 106 S.Ct. at 2031.

We have already held that claims of systemwide misapplication or invalidity are collateral to the claims for individual benefits. The district court concluded that plaintiffs' allegations of financial and other hardships established "at least a colorable showing of irreparable harm." App. I at 63. This court has found that the fact that claimants have severe mental or physical conditions and few resources other than the requested benefits justifies a finding of irreparable harm and a waiver of the exhaustion requirement. *Wilkerson v. Bowen*, 828 F.2d 117, 121–22 (3d Cir.1987). Moreover, in *City of New York*, the Court referred to the practical considerations militating against the requirement that claimants go through the motions of administrative review when a court is addressing a claim that the agency applies an illegal standard. 476 U.S. at 484–85, 106 S.Ct. at 2032; *see also Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346 (3d Cir.1977) ("No interest of the agency requires the multiple exhaustion of the same issue by blind class members, who are … unusually dependent on the benefits in question.")

Indeed, in *City of New York*, the Court cautioned that waiver of exhaustion should not be determined by "mechanical application of the *Eldridge* factors." *City of New York*, 476 U.S. at 484, 106 S.Ct. at 2032. We note that when the First Circuit invalidated the combination policy, it affirmed the district court's order including in the class of claimants eligible to have their cases readjudicated by the Secretary those claimants who had failed to exhaust their administrative remedies during the pendency of the class action. *See McDonald v. Secretary of Health and Human Services*, 834 F.2d 1085, 1092 (1st Cir.1987).

We therefore conclude that the class entitled to readjudication of their claims because they were denied benefits under the invalid combination policy includes those claimants who failed to exhaust their administrative remedies or seek judicial review between the time the class action was filed and the time the case was decided on the merits.

Because we are remanding this case to the district court for a reexamination of the claim alleging systematic misapplication of the severity regulations, it would be premature for us to discuss the parameters of the appropriate class of those claimants were the district court to reinstate that claim. It may be that the decision relating to admin-

istrative exhaustion and tolling of the statute of limitations might have to be deferred until such time as the district court rules on the existence or non-existence of such a secret policy, notwithstanding the general requirement that class action determinations be made promptly. *See Wilson v. Sullivan,* 709 F.Supp. at 1361 (reserving final definition of class in systemwide challenge to SSA severity regulations until after resolution of factual matters); *see also Holman v. Califano,* 835 F.2d 1056, 1058 (3d Cir.1987). We note merely that with respect to the challenge on the basis of a systemwide secret policy, the holdings in *City of New York* with respect to equitable tolling and waiver of administrative exhaustion depended on the secret policy applied by the Secretary and may be more analogous than they are to the openly stated combination policy at issue before us now.[9]

### VII.

#### Conclusion

For the reasons set forth above, we will affirm the district court's order invalidating the Secretary's policy of refusing to consider the combined effect of nonsevere impairments. We will vacate the court's order defining the class of claimants who are the object of the court's order with respect to the combination policy, and we will remand the matter so that the district court can redefine the class in accordance with this opinion. We will affirm the district court's order refusing to permit plaintiffs to file a second amended complaint, as well as its order dismissing the plaintiffs' APA challenges. We will reverse the district court's order dismissing the claims based on plaintiffs' as applied challenge to the severity regulations and remand for further proceedings consistent with this opinion.

9. Of course, nothing here prevents the Secretary from deciding that in light of the need to reevaluate the class members who may have been adversely affected by the invalid combination regulations, it would be expeditious as an ad-

The Secretary is to pay 85% of the costs on appeal, the plaintiffs are to pay the remaining 15%.

ministrative matter to reevaluate them at the same time applying the "slight impairment" standard. This could save the need for an additional mass reevaluation should plaintiffs prevail on their misapplication claim.